Robert L. TIPP and Agnes B. Tipp *v.* UNITED BANK OF DURANGO, COLORADO

CA 87-296 745 S.W.2d 141

Court of Appeals of Arkansas
Division I
Opinion delivered February 24, 1988

*James W. Haddock*, for appellant.

*Hani W. Hashem*, for appellee.

JAMES R. COOPER, Judge. The appellee in this civil case, United Bank of Durango, brought an action to set aside a conveyance of real property from Robert Duffy and Roberta Duffy to the appellants, Robert L. Tipp and Agnes B. Tipp. The chancellor found that the conveyance from the Duffys to the Tipps was a fraudulent conveyance made to hinder and delay the United Bank of Durango in its attempts to collect an obligation owed to it by the Duffys, and set the conveyance aside. From that decision, comes this appeal.

For reversal, the appellants contend that the chancellor erred in finding that the transfer of property was a fraudulent conveyance. We affirm.

The record shows that the appellants entered into a contract with the Duffys on January 5, 1984, whereby they agreed to purchase certain real property in Chicot County, Arkansas. The contract provided for a total purchase price of $66,000.00, and acknowledged the receipt of an initial payment of $13,200.00. It further provided that the appellants were to pay the Duffys the balance of $52,800.00, plus interest at the rate of ten percent per annum, in ten annual installments of $5,280.00 plus interest, with the first installment being due on January 5, 1985. On January 4, 1985, the appellants paid the Duffys $5,808.00. On March 22, 1985, the appellants made a final payment of $40,000.00 by a check made payable to the Duffys and Ted Gunderson. Although the total amount paid by the appellants was less than the amount they owed under the terms of the contract, the Duffys executed a deed conveying the property to the appellants. The deed was filed for record on April 1, 1985.

On November 5, 1984, the Bank of Durango obtained a default judgment against the Duffys in the District Court of La Plata County, Colorado, for an amount in excess of $20,000.00. On February 19, 1985, the Bank filed a petition in the Circuit Court of Chicot County, Arkansas, to register the Colorado judgment. That judgment was entered and enrolled in Chicot County on May 23, 1985. On February 6, 1986, the appellee filed this action to set aside the conveyance from the Duffys to the appellants. The chancellor found that the Duffys, who did not appear or defend, were in default, and that their insolvency was

established by the appellee's undenied allegation of insolvency; that the appellee had obtained a judgment against the Duffys in the amount of $19,176.94 plus interest, costs, and attorney's fees; that Robert L. Tipp was, in February 1985, aware that there was pending litigation that would affect the property, and that the appellants subsequently purchased the property for a price that was approximately $17,500.00 less than the amount still owed on the contract; that the transaction was a hurried one involving no title work or title insurance; and that the conveyance was fraudulent. Although the conveyance was set aside, the appellants were found to have a first and paramount equitable lien on the property in the amount of $19,008.00, reflecting payments of $13,200.00 and $5,808.00 made before the appellants learned of the Duffys' financial difficulties.

The appellants contend that the evidence does not support a finding of fraudulent intent on their part, and that the chancellor erred in finding the transaction to be a fraudulent conveyance. Arkansas Statutes Annotated § 68-1302 (Repl. 1979) provides that:

> Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, or in goods and chattels, or things in action, or of any rents issuing therefrom, and every charge upon lands, goods or things in action, or upon the rents and profits thereof, and every bond, suit, judgment, decree or execution, made or contrived with the intent to hinder, delay or defraud creditors or other persons of their lawful actions, damages, forfeitures, debts or demands, as against creditors and purchasers prior and subsequent, shall be void.

Fraudulent intent is necessary to bring a conveyance within the purview of § 68-1302, *Ralston Purina Co.* v. *Davis*, 256 Ark. 972, 511 S.W.2d 482 (1974), and both the vendor and the vendee must act with fraudulent intent before the conveyance will be regarded as fraudulent. *Hemingway* v. *Glasper*, 291 Ark. 172, 722 S.W.2d 866 (1987). The party who alleges and relies upon fraud bears the burden of proving fraud by a preponderance of the evidence, *Ouachita Electric Cooperative Corp.* v. *Evans-St. Clair*, 12 Ark. App. 171, 672 S.W.2d 660 (1984); fraud may be established by circumstantial evidence where the circum-

stances are so clear and well-connected as to clearly show fraud. *Id.* Badges of fraud, i.e., circumstances that are recognized as indicia of fraudulent intent, include insolvency or indebtedness of the transferor, inadequate or fictitious consideration, retention of property by the debtor, the pendency or threat of litigation, secrecy or concealment, and the employment of unusual business practices in the disputed transaction. *Id.; Bank of Sun Prairie* v. *Hovig*, 218 F. Supp. 769 (W.D. Ark. 1963).

■ The appellants argue that the land-sale contract between themselves and the Duffys had the effect of taking the transaction out of the purview of fraudulent conveyance law, because the contract was entered into before the alleged fraudulent intent arose, and because the lien on the foreign judgment did not attach until after the conveyance had occurred. We do not agree. Although it is true that a judgment lien attaches only to a judgment debtor's interest in the land, and that the lien ceases to exist when the debtor's interest in the land is eliminated, *Snow Brothers Hardware Co.* v. *Ellis*, 180 Ark. 238, 21 S.W.2d 162 (1929), this rule is for the protection of junior creditors and innocent purchasers, and does not prevent a creditor of the grantor from electing to treat a fraudulent conveyance of the debtor's property as void, and instituting legal process to subject the property to his debt. *Ward* v. *Sturdivant*, 81 Ark. 73, 98 S.W. 690 (1906). The appellants' argument must therefore fail unless the chancellor erred in finding that their intent was fraudulent.

■ The appellants assert that they should be treated as good-faith purchasers because there is no evidence that they had notice of the Duffys' financial difficulties or the pendency of litigation at the time that they entered into the land-sale contract. We disagree. The rule is that the purchaser's good faith must exist both at the time of the purchase and at the time the consideration is paid. *Massie* v. *Enyart*, 32 Ark. 251 (1877). The reasoning underlying this rule is explained in 1 G. Glenn, *Fraudulent Conveyances and Preferences* § 244 (1940), in a section entitled, "Part Payment by Grantee before Notice of Debtor's Intent":

> If [a man who buys property subject to outstanding equities] knows of the equity or has notice of it before he buys, he should not buy. If he learns of it after he has signed

a contract, he should go no further with performance; but he is protected to the extent of payments that were made before knowledge came.

> The same rule applies here. The creditor, of course, holds no equity in his debtor's property . . . but he does have a statutory right to avoid the transfer. Faced with this right of the creditor, the grantee's duty is to stop short just so soon as he learns that the debtor's purpose has been fraudulent. This can not harm the grantee, because he will be accorded a lien on the property to the extent of the payments he has made while in a state of innocence. Such is the rule of sound equity that applies to all such cases, and to all sorts of property, real and personal.

(Footnotes omitted). *See also* 37 Am. Jur. 2d *Fraudulent Conveyances* § 123 (1968).

 The question which presents itself under the above-cited authorities is whether the chancellor erred in finding that the appellants acted with fraudulent intent at the time that the final consideration was paid. Although chancery cases are tried *de novo* on appeal, the chancellor's findings of fact will not be reversed unless they are clearly against the preponderance of the evidence, giving due regard to the chancellor's superior opportunity to assess the credibility of the witnesses. *Cox v. Cox*, 17 Ark. App. 93, 704 S.W.2d 171 (1986). The appellant, Robert L. Tipp, admitted at trial that, after paying the down payment and the initial installment on the contract, he learned in February 1985 that the appellee was pursuing a judgment against the Duffys, and that he then borrowed from his family to secure funds to close the transaction; that no abstract was prepared and no title insurance was secured with respect to the conveyance; and that Mr. Duffy had, prior to closing, informed him that there were "problems with the property." Bill Holloway, the attorney secured by the appellee to register the Colorado judgment in Arkansas, testified that he spoke to Mr. Tipp after the petition to register the judgment was filed, that Mr. Tipp was aware that steps were being taken to register the judgment against Mr. Duffy, that Mr. Tipp informed him that he had a contract to purchase the land and requested information about the status of the foreign judgment, and that Holloway informed Tipp that he

182

could try to purchase the property from the appellee. There was also evidence that the price that the appellants paid for the property was substantially less than the price originally specified in the land-sale agreement. Under these circumstances, we cannot say that the chancellor clearly erred in finding the conveyance to be fraudulent, and we affirm.

Affirmed.

JENNINGS and COULSON, JJ., agree.